Good morning. My name is Barbara Michelle. I'm appearing for Mr. Sisavath. Why don't you move the microphone just a little closer to you, if you don't mind. Is that OK? Yes, thank you. I would like to talk about the question of error in admission of INCA statements. Is it all right if I, shall I refer to her as V2? Sure, that's fine. Preferable? Just a minute. OK. With regard to counts four and five, count four accused Mr. Sisavath of, sorry, I'm just a little nervous here, of assault and penetration. Count five accused him of assault and rape, or with intent to commit rape. And I would like to talk about some of the reasons why V2's, the admission of V2's statements into the record adversely affected the jury's determinations as to counts four and five and why they should therefore be reversed. I've talked about this, of course, in my briefing. And I hope that I'm not being boringly repetitive. So how did V2's statements affect the convictions in counts four and five? First of all, the record shows that the jury had trouble with Monica's, I'm sorry, with V1's testimony with regard to other counts. They disbelieved the evidence in count two, which is commission of allude act, and reduced the, so they found my client not guilty of that incident. They reduced the charge in count three from assault with intent to commit rape to a simple misdemeanor assault. This suggests that they were not, well, it demonstrates that they did not find the testimony and the evidence convincing as to those counts. As the counts were, it may have been a compromise, a verdict. It may have been a compromise, but it certainly wasn't. Where they sort of figured out, okay, we'll get them on, you know, where the jurors are split back in the jury room, and they work out a compromise. And I think that might even help your argument, if it were, because that would suggest that might help your argument, if it were. Well, perhaps it was a compromise verdict. Where I was going with that was that the evidence was not overwhelmingly convincing to the jury. So they needed something more, obviously, when they did convict my client. It's also noteworthy that the counts, that the jury originally hung on counts four and five, indicating, again, difficulties with the evidence and perhaps a compromise verdict. It's also telling, I think, that the foreperson came back out to the court at that time and said that, well, we're having trouble with counts four and five, but perhaps if a lesser offense were offered, we could reach unanimity there. So the tough part of your case, it seems to me, is that this is a State habeas case, and we have the AEDPA standard. So why do you think the – can you describe why you think the State court's decision was an unreasonable application of Crawford? I hope that I can do that. Unreasonable application of the facts. The court, I believe the court of appeal – you're talking about the court of appeal's decision. Yes. It did not offer a reasoned analysis with respect to counts four and five. It merely said that the evidence was strong. It didn't go back and forth saying, on the one hand, Alex, who was sleeping in the same room, saw nothing, Lee, who was sleeping in the next room, heard nothing. It didn't – it didn't say anything about the plausibility or implausibility of the one's testimony regarding walking on Mr. Sisevat's penis. It didn't say anything about the fact that the prosecutor told the jury that V2's statements were entitled to special weight when, in fact, they were rank hearsay. So the court – there are all these problems with the evidence in the case, in other words, and the court really didn't bring them up in its analysis. My client gave a plausible dream for the presence of semen, which is that he has wet dreams twice a month. It's also very interesting that the children's mother took them to a doctor, I believe, the next day, and the doctor found no evidence of any abuse. Now, you might expect that if they were merely, I don't know, undefined lewd acts, but if we were talking about rape, if we were talking about penetration, then you would expect to find something, and nothing was found. The DNA evidence presented special problems. I've never seen a case before where it's examined, it's collected almost immediately and examined soon thereafter, and nothing is found, even with an ultraviolet light. Yet, what, two and a half years later or whenever that was, oh, all of a sudden it's visible. There's no explanation given for that. Apparently, it's a very small spot, though, if I understand the record correctly. Well, I mean, it was examined by a trained specialist with ultraviolet light, so I don't know what more to say. If it was visible a long period of time later, it should have been visible at the time. I think the record suggests that that technique is not necessarily infallible. No, I'm not arguing that it's infallible. I'm simply saying that this is yet another reason why it was not an open and shut case, and there were plenty of problems with the evidence presented. Yeah, but the DNA evidence was the DNA evidence. There's no suggestion that it was somehow corrupted or tainted or did not match. That's correct. Okay. Yes. Excuse me for a minute, please. So INCA, in fact, INCA's statements, in fact, did corroborate the evidence in important ways. With regard to Count 4, I believe that's the assault, that's the Lou Dach penetration. INCA told Ramirez and Vincent that that occurred with a pinky or a thumb. And with regard to Count 5, INCA corroborated that, that's the assault with a, I'm sorry, it's an assault slash rape, I believe, that the night before that my client had, quote, hurt Monica. Now, hurt is a very general word, but it could be used by a 4-year-old to describe what she thought had happened the night before. So also the fact that the jury initially deadlocked on Count 4 indicates that there were problems with that, again, as you say, perhaps a compromise verdict. Do you have any authority for the proposition, which I think is at the heart of the argument you've been giving, that before the rule can apply, the reason the court decision, the last decision of the State court has to, in fact, contain reasoned analysis for its conclusions? Is there an authority for that proposition? I do not have authority. I can look for it. I am looking, I got that phrase from the opinion of the judge in the District Court of Appeal, who looked at the Fifth District's opinion and called it a reasoned And as I'm looking at it, or as I reread it, the court, I'm sorry, the Fifth District's opinion was reasoned in many ways. But when it came to Counts 4 and 5, they kind of glossed over those counts and went on to other ones. And my question, maybe I didn't express it clearly, is does a State court, do you have an authority that says simply declaring ex cathedra that the evidence was strong and therefore sufficient? Do you have an opinion that says, no, you've got to do more than that before the standard applies in this court? No, I do not. I would be happy to research it and submit supplemental authority. At this point, I do not. Okay. Your time has expired. Thank you for your argument. Mr. Reilly. Thank you. Good morning. May it please the Court. Justin Reilly on behalf of the Respondent. Opposing counsel presents several inferences, some of them reasonable inferences that one could make from the State court record. However, they're conflicting inferences with the judgment. Here on a DPA review, we must make all inferences in favor of the judgment, as this Court is undoubtedly aware. This includes credibility determinations, inferences and conclusions both expressly and impliedly made. With that in mind, some fair-minded jurist could have concluded that V2's testimony was of slight importance and therefore concluded that the error was harmless beyond a reasonable doubt based on Victim 1's prior statements to both a district attorney investigator and a police investigator, the DNA evidence and her testimony at trial. I'd love to answer any questions about this case. Well, is there, as I understood her argument, it was that the Court simply failed to give any reasons for its conclusion that the evidence was strong. And is there any authority that says that's enough? I apologize. Failed to give any reasons for? Its conclusion that the evidence was strong without having the kind of discussion you and she both have had in your briefs about the weight of the evidence. Do you understand my question? I think I do. And on AEBPA review, a State court's judgment will always be open to some sort of interpretation by a Petitioner years after the State court decision was rendered. It's simply not our business to try to penetrate that veil. That's the finding the Court reached, and that's the end of the discussion. Right. Is that correct? We look for reasonableness, and then we stop there. Thank you. Your time has expired, so thank you both for your arguments, and we'll proceed to the next case on the oral argument calendar, which is Yang v. Woodford.
judges: Carr, Thomas, Clifton